### MITCHELL *v.* HINES.

1. PROCESS—STATUTES—MOTION TO QUASH.

    Where service of summons did not comply with statute in that original writ was not shown to defendant nor copy delivered to him, motion to quash service should have been granted (3 Comp. Laws 1929, § 14084).

2. EQUITY—COSTS—SERVICE OF PROCESS.

    Suit in equity is dismissed as to defendant who had not been served with process in accordance with statutory requirements and who had not filed a general appearance, but without costs and without prejudice where such defendant had made an intentional attempt ·to hinder an officer in performing his duties as such conduct should not be condoned as a matter of public policy (3 Comp. Laws 1929, §§ 14084, 15435).

3. CONSTITUTIONAL LAW—INTERFERENCE WITH BUSINESS—NUISANCE.

    A person conducting a legitimate business has a right to do so without interference, providing such business is not so conducted as to constitute a nuisance.

4. INJUNCTION—NUISANCE—PIGGERY—CHARACTER OF NEIGHBORHOOD.

    In suit by home owners to enjoin operation of nearby garbage-fed piggery, fact that residential district had expanded so as to be in the immediate neighborhood of the piggery is immaterial as grounds of complaint would be the same if neighborhood were rural.

5. NUISANCE—INJUNCTION—HEALTH—EVIDENCE.

    Where a board of health seeks to enjoin the conduct of a business as detrimental to public health, that detriment must be proved.

6. SAME—ABATEMENT—HEALTH.

    In suit to abate a private nuisance, it need not be shown that there is a detriment to health.

7. SAME—PIGGERY—EVIDENCE—ABATEMENT.

    Arguments that a court of equity may not enjoin an injury already perpetrated nor enjoin a mere threat or possibility of a future nuisance are not discussed in home owners' suit to enjoin conduct of nearby garbage-fed piggery where testimony clearly established a nuisance arising therefrom, that

Defects of process as affecting jurisdiction of court, see Restatement, Judgments, § 8, comment b; common-law requirements as to service of process, see § 14, comment b; proper methods of service, see § 15, comment d.

temporary partial abatement was due to weather conditions, and that nuisance was in existence at time of trial.

8. INJUNCTION—NUISANCE—REMEDY.

A court of equity is reluctant to bar the operation of a lawful business and will not do so if a remedy may be applied to the nuisance incidental thereto.

9. SAME—NUISANCE—GARBAGE-FED PIGGERY.

Operation of large-scale garbage-fed piggery is enjoined at suit of nearby home owners where testimony clearly established a nuisance and no method of feeding garbage to pigs on a commercial scale that will not constitute a nuisance is disclosed.

Appeal from Oakland; Holland (H. Russel), J. Submitted April 9, 1943. (Docket No. 31, Calendar No. 42,317.) Decided May 18, 1943. Rehearing applied for by defendants Plybon and Heth denied June 30, 1943.

Bill by Almeron J. Mitchell and other property owners against George Hines, Bashie Plybon and Clarence Heth to abate a nuisance. Decree for plaintiffs. Defendants appeal. Reversed as to defendant Hines; affirmed as to other defendants.

*Claude E. Morrow* and *David E. Kull,* for plaintiffs.

*Earl N. Nash* and *Benjamin Marcus,* for defendants.

NORTH, J. This is an action to enjoin defendants from operating a piggery on a farm located in Southfield township in Oakland county. The defendants are Clarence Heth, owner of the farm; Bashie Plybon, renter and operator of the farm; and George Hines, who lives on the farm, but who apparently is only involved herein because he was engaged in collecting and transporting garbage to the farm. The plaintiffs are various owners of residential properties in Beverly Hills, a residential

section of single homes ranging in price from $10,000 to $25,000 and located in the general vicinity of the Heth farm.

The record shows that the defendant Mrs. Plybon has operated a piggery on the farm, and since 1935 has fed the pigs on garbage collected from various nearby cities. The number of pigs ranged from about 200 in 1935 to about 400 in 1940-1941. The practice was to feed the garbage to the pigs in an open field and later to plow under the unconsumed portion. In the field there was a metal container into which all dead animals collected with the garbage were supposed to be thrown. From September, 1940, to September, 1941, garbage was hauled to the farm from the city of Ferndale, and apparently the Ferndale garbage haulers dumped the garbage and dead animals anywhere in the field. A revolting odor resulted, particularly in warm weather.

The plaintiffs and their witnesses testified that during the winter months the odors emanating from the piggery were not noticeable but that the odors particularly during the spring, summer, and fall of 1941 were so revolting as to greatly impair the enjoyment of their homes. Several witnesses testified that the objectionable odors were recurring in the spring of 1942 at the time of the trial.

Mrs. Skelton has owned and at various intervals has lived on her property about 20 years. The other plaintiffs have lived in their present residences from one to four years prior to 1940, and their witnesses from 1 to 21 years prior to 1940. The odors complained of were not noticed or did not become objectionable until the summer of 1940. Several of the plaintiffs' witnesses gave graphic descriptions of the odors and the deleterious effect of those odors on the witnesses.

After hearing proof, the trial court held the condition on the Heth farm giving rise to the noxious

odors constituted a nuisance, that the recent abatement of the nuisance was due to the temperature of winter weather, that the plaintiffs suffered a continuing damage both as to the diminution of property values and as to the enjoyment of their homes as a result of the nuisance; and the court entered a decree restraining the defendants from purchasing, collecting, or acquiring garbage and hauling and transporting or causing ''to be hauled or transported the same on the premises here involved; and from feeding the same to hogs upon said premises or allowing said garbage to be upon the premises.''

The defendant cites 30 reasons and grounds for appeal—which can be reduced to two principal questions: Was there a valid service of process on defendant Hines; and was the court in error in granting the injunction? These questions will be considered in order.

In August, 1941, the plaintiffs filed suit, and defendants Plybon and Heth were duly served with process. On October 16, 1941, a return of service of alias summons was filed showing personal service on defendant Hines by one Lloyd Leaym. On November 10, 1941, Hines' default for failure to appear was taken and on November 29th defendant Hines appeared specially and moved to set aside the default and quash service of process on him. The court entered an order denying motion to quash service, set aside the default, ordered plaintiff to file security for costs as to defendant Hines and granted Hines 15 days to appear and answer. Hines, however, did not file a general appearance. Thereafter Hines filed an application for leave to appeal to the Supreme Court which was denied. Subsequently Hines filed an answer, expressly reserving, however, the right to assign error on the trial court's denial of his motion to quash service.

In support of his motion to quash, Hines filed three affidavits besides his own to the effect that on the day of the claimed service, he was not on the farm premises. In support of the service, Constable Lloyd Leaym made affidavit that he saw Hines in the yard at the farm and drove his car into the yard; that Leaym jumped out of his car to talk to Hines, but Hines ran to the house; Leaym called to Hines and pursued him to the house, but Hines reached the house first and closed the door; later defendant Plybon came to the door and said Hines was using the telephone and refused Leaym admittance; after about 10 minutes, during which Leaym was called names by defendant Plybon, Leaym threw the summons and bill of complaint into the kitchen and said, "True seal of the court" as he showed the original summons, evidently to Mrs. Plybon.

The method of making service of a summons is controlled by statute. 3 Comp. Laws 1929, § 14084 (Stat. Ann. § 27.751), provides: "Writs of summons at law and in chancery, shall be served by showing the original writ to the defendant and delivering to him a copy thereof." The attempted service by Constable Leaym did not comply with the statutory requirement. By the constable's own affidavit it appears that the original writ was not shown to Hines, nor was a copy delivered to him. The motion to quash the service should have been granted by the trial court. However, we do not view with favor the action of defendant Hines in avoiding the process server, as described by constable Leaym. It is apparent that there was an intentional attempt to hinder an officer in performing his duties. Such conduct should not be condoned as a matter of public policy. As the granting of costs in an equity case is discretionary (3 Comp. Laws 1929, § 15435 [Stat. Ann. § 27.2524]), the suit will be dismissed

as to defendant Hines, but without costs and without prejudice.

The feeding of garbage to pigs is not a new custom nor are the premises where pigs are kept usually odorless. Unquestionably the defendants have a right to carry on their business of raising pigs without interference, providing such a business is not so conducted as to constitute a nuisance. To so conduct a piggery on a large scale is difficult, if not impossible, even when great care is taken and the most advanced methods are used in disposing of the remainder of the garbage. See *Trowbridge* v. *City of Lansing,* 237 Mich. 402 (50 A. L. R. 1014). In the *Trowbridge Case,* various engineers and professors cooperated with the defendant city of Lansing in an effort to abate the nuisance, but the results were so negative that this court affirmed the decree of the circuit court granting the plaintiffs therein relief.

The record shows that we do not have here a case where newcomers have moved into an unpleasant neighborhood and seek to change the neighborhood, but rather we have a case where for some years the piggery was conducted on a small scale and was not objectionable. Then, either the increased size of the piggery or the condition of the fields through the continued dumping of garbage thereon, or both, created such odors that this suit resulted. The fact that the plaintiffs are home owners and that a residential district has expanded so that it is now in the immediate neighborhood of the piggery is not arguable. If the plaintiffs were farmers in a rural community and such a condition existed on an adjacent farm, they would still have grounds for complaint.

Where a board of health institutes an action on the basis that the business is detrimental to public

health, that detriment must of course be proved. *Township of Kalamazoo* v. *Kalamazoo Garbage Co.*, 229 Mich. 263; *Township of Kalamazoo* v. *Lee*, 228 Mich. 117; *Charlotte Board of Health* v. *Santee*, 224 Mich. 182. However, detriment to health need not be proved to show a private nuisance. *Trowbridge* v. *City of Lansing, supra.*

The defendant argues that a court of equity may not enjoin an injury already perpetrated, nor may a court of equity enjoin a mere threat or possibility of a future nuisance. These arguments need not be discussed as the testimony is clear that there was a nuisance, that its temporary partial abatement was due to weather conditions, and that the nuisance was in existence at the time of the trial.

The court of equity is reluctant to bar the operation of a lawful business and will not do so if a remedy may be applied to the nuisance incidental thereto. However, tests do not show any satisfactory means of carrying on a large-scale garbage-feeding piggery. *Trowbridge* v. *City of Lansing, supra.* No method of feeding garbage to pigs on a commercial scale, as is here the case, in a manner that will not constitute a nuisance has been disclosed by the proof.

Decree is affirmed as to defendants Heth and Plybon, with costs to the plaintiffs.

Boyles, C. J., and Chandler, Starr, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.