29 N.J. Super. 585 (1954)
103 A.2d 53
JOSEPH KURTZ AND DAVID BUSCH, PLAINTIFFS,
v.
BENJAMIN OREMLAND, PEARL OREMLAND, DAVID LEWIS AND ALBERT M. GREENFIELD & CO., A CORPORATION OF NEW JERSEY, JOINTLY AND SEVERALLY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 8, 1954.
*586 Mr. Bernard Hellring for plaintiffs (Messrs. Greene & Hellring, attorneys).
Mr. Wm. Elmer Brown, Jr., for defendants David Lewis and Pearl Oremland.
Mr. David N. Perskie for Dunn's English Leather Shop, Inc. (Messrs. Perskie & Perskie, attorneys).
Mr. Carl Kisselman for defendant Albert M. Greenfield & Co.
HANEMAN, J.S.C.
This is a motion for entry of default against defendant Benjamin Oremland, who was allegedly served with a summons and complaint on August 30, 1952, at No. 213 North Chelsea Avenue, Atlantic City, New Jersey. The question is whether service was ever made on said defendant as required by R.R. 4:4-4.
The facts in connection herewith are as follows: The defendant Benjamin Oremland, a member of the bar of the State of New York, and his wife Pearl Oremland, were two of the named defendants in the above entitled matter. Plaintiffs forwarded their summons and complaint to the *587 Sheriff of Atlantic County for service upon the said Oremlands some time prior to August 30, 1952, and George C. Elmer, Under-Sheriff of Atlantic County, was deputized by the said sheriff to make service upon the said Oremlands. On that date he proceeded to No. 213 North Chelsea Avenue, Atlantic City, New Jersey. In connection with his conduct thereafter, he testified as follows:
"A. I received the papers from our office in the usual manner and I proceeded to 213 North Chelsea Avenue at 9:30 a.m. I knocked on the door and eventually it was answered by a lady who is either a nurse for the senior Mr. Lewis, I believe, or a maid in the house, and I asked to see Mr. and Mrs. Oremland. She advised me they were upstairs in bed. I said that I would wait. I had a lot of time and I would wait. Eventually after hearing some talking upstairs Mrs. Oremland came down. I gave her her service and I told her I also had one for her husband and would she take that. She said no, she wouldn't have anything to do with that and I said, `Well, I will go upstairs.' It was Saturday and I didn't want to go back. She said, `No, I won't permit that.' `What time can I give the papers to him?' She said `Well, it is early,' and I have a lot of business about coming so early and so forth in the morning and disturbing them. `However,' she said, `come back at eleven o'clock,' and that he would be up and I could serve him then.
I returned at 10 minutes of eleven and was informed by the same lady, the maid or whatever she was, that Oremlands had left for New York. I asked her did she know when they would be back and she said she didn't know anything at all about it. I returned later in the afternoon and she didn't even want to come to the door, wouldn't give me any satisfaction at all."
He did not thereafter attempt any further service upon the said Benjamin Oremland at said address by leaving the summons and a copy of the complaint with some competent member of his family of the age of 14 years or over then residing therein. No return of service has ever been made by the said under-sheriff. Proof of service was attempted to be made by the oral testimony of the said George Elmer, a portion of which has been above adverted to.
There is no proof that No. 213 North Chelsea Avenue, Atlantic City, New Jersey, was the "dwelling house or usual place of abode" of the defendant. The proof merely discloses that Pearl Oremland, the wife of Benjamin Oremland, *588 upon the date in question admitted that he was "upstairs in bed." The under-sheriff performed no physical acts whatsoever in attempting to serve either the defendant himself or his wife or other competent member of his family of the age of 14 years or over at No. 213 North Chelsea Avenue, Atlantic City, New Jersey.
Plaintiffs conceive that under the facts here present that the defendant attempted to evade service and that, therefore, the acts of the under-sheriff were sufficient to effectuate service upon him.
Plaintiffs admit at the outset that actual physical personal service was never made upon the defendant. They seek to read into the refusal of defendant's wife to disturb him, and the conversation with her, a duty upon the defendant to be present at No. 213 North Chelsea Avenue, Atlantic City, New Jersey, at 11 o'clock in the morning of August 30, 1952. Plaintiffs primarily base this conclusion upon the cases of Walkoczy v. Bowers, N.J. Sup., 146 A. 34 (Sup. Ct. 1929) and Pickford v. Kravetz, 17 F.R.S. (4d.121), case 1 (D.C.S.D.N.Y. 1952). In the first of these two cases the facts were recited as follows:
"When we come to the testimony taken under this writ, it will be found that a great deal of it indicates that while the defendant lived in Middlesex county she was, at the time the sergeant at arms undertook to serve the summons, in a house on a farm owned by her in Somerset county in which her daughter lived, and that the summons itself was delivered to her granddaughter, a girl of sufficient age, at that house while the defendant was there. The testimony of the sergeant at arms, of whose truth and accuracy I am entirely satisfied, shows that he knocked at the door of this house, and that his knock was answered by the girl, who in reply to his question stated that defendant was there; he said that he would like to see her, and she brought the defendant out, whereupon the sergeant at arms drew from his pocket the summons, which up to that time he had not shown, and was proceeding to make service thereof when the defendant promptly retreated inside the house and locked and bolted the door."
The court said as follows:
"This case appears to be authority for holding that where the officer actually meets the defendant and undertakes to make legal *589 service personally, it is not open to the defendant to run away knowing that a summons was to be served and then claim that the service was insufficient."
In Pickford v. Kravetz, supra, the service was made upon the manager of a hotel in which the defendant Charles Chaplin was registered. The court there found that under F.R.S. (4d.121) (1) the hotel, under the circumstances, was, in the language of the rule, the defendant's "dwelling place" and that the manager upon whom service had been made "a person of suitable age and discretion then residing therein." It is to be noted in the above case that upon the refusal of the manager to give any information as to the suite occupied by the defendant and his family, the service was made upon the manager by leaving the papers with him.
It must be conceded that when "men who are within easy speaking distance of each other, and facts occur which would convince a reasonable man that personal service is being attempted," service cannot be avoided by physically refusing to accept a summons and complaint. Walkoczy v. Bowers, supra; 72 C.J.S. 1043.
Contrary to the evidence here present, there was affirmative proof in both of the foregoing matters that the address there involved was the defendant's "dwelling house or usual place of abode." The matter sub judice is also different and distinguishable from the two cases principally relied upon by the plaintiffs. Here there is (1) absent any proof that the under-sheriff attempted physically to make service by delivering a copy of the summons and complaint to the defendant personally, as well as (2) absent any proof that the under-sheriff attempted to make service by delivering a copy of the summons and complaint to the wife of the defendant or any other competent member of the defendant's family of the age of 14 years or over then residing at that address.
All the under-sheriff here did was to suggest to the wife of the defendant an appointment to accommodate his convenience for service. His failure to keep such an appointment falls far short of the type conduct which would constitute an evasion of service. Reduced to its ridiculous extreme, *590 were service here held to be good and valid, all that a sheriff would ever have to do would be to contact some member of a defendant's family and suggest that he would attend at a definite time and place, both of his own selection, to make service upon said defendant, and if a member of that family then acquiesced, even by implication, defendant's failure to so attend would constitute valid service upon him. Clearly this is not such service as is constitutionally required.
The motion will be denied.