BARCLAY v CROWN BUILDING AND DEVELOPMENT, INC

Docket No. 208348. Submitted December 7, 1999, at Detroit. Decided July 11, 2000, at 9:05 A.M.

John M. Barclay and Gaye Snell brought an action in the Oakland Circuit Court against Crown Building and Development, Inc., and Thomas H. Christenson, alleging slander of title and seeking to quiet title to realty. A default was entered when the defendants failed to file an answer. The defendants moved to set aside the default, arguing that the court lacked personal jurisdiction over the defendants because the process server had not effected in-hand service of the summons and complaint on Christenson. The plaintiffs responded with a motion for entry of a default judgment. The court, David F. Breck, J., denied the defendants' motion to set aside the default, granted the plaintiffs' motion for entry of a default judgment, and denied the defendants' motion to set aside the default judgment. The defendants appealed.

The Court of Appeals *held*:

1. MCR 2.105(A)(1) provides that process may be served on an individual by delivering a summons and a copy of the complaint to the defendant personally. The rule does not require in-hand delivery when a defendant refuses to accept service or attempts to evade service. Personal service is effected when the defendant is left with the papers within his physical control, after being offered them and informed of their contents. In this case personal service on Christenson was effected when, after Christenson denied his identity when approached by the process server and tried to evade the process server by quickly entering his office and shutting its door, the process server left the summons and complaint on the handle of the door to Christenson's office and told Christenson through the door that he was served.

2. The trial court did not abuse its discretion in denying the defendants' motion to set aside the default judgment. The plaintiffs' response to the defendants' motion to set aside the default provided the defendants with adequate notice of the plaintiffs' intent to seek a default judgment. The defendants failed to establish a meritorious defense or good cause for setting aside the default or the default judgment, as required by MCR 2.603(D)(1). The defend-

ants are not entitled to relief from judgment under MCR 2.612(C)(1)(f) on the asserted ground of manifest injustice because the defendants' manifest injustice arguments merely repeat the arguments for relief under MCR 2.603, and MCR 2.612(C)(1)(f) should not be construed so as to obliterate the analysis under MCR 2.603(D)(1).

Affirmed.

1. PROCESS — SERVICE OF PROCESS — PERSONAL SERVICE.

Personal service on a defendant who refuses to accept service or attempts to evade service is effected when the defendant is left with the papers within his physical control, after being offered them and informed of their contents (MCR 2.105[A][1]).

2. ACTIONS — DEFAULTS — DEFAULT JUDGMENTS.

Good cause for setting aside a default or a default judgment includes a procedural irregularity or defect, or a reasonable excuse for not complying with the requirements that created the default (MCR 2.603[D][1]).

*Frank, Stefani and Haron* (by *Patrick C. Hall*), for the plaintiffs.

*Robert A. Kuhr*, for the defendants.

Before: WHITE, P.J., and SAWYER and GRIFFIN, JJ.

PER CURIAM. Defendants appeal as of right, challenging the circuit court's entry of a default judgment against defendants and the court's denial of defendants' motion to set aside the default judgment. We affirm.

I

Plaintiffs John M. Barclay and Gaye Snell filed this action alleging slander of title, MCL 565.108; MSA 26.1278, and to quiet title, on June 17, 1997.[1] Defend-

---

[1] This case arose from an option to purchase real property. Defendants failed to timely exercise the option and sought to amend and extend the option. Plaintiffs claim the option period was not extended, while defend-

ant Thomas H. Christenson is the sole shareholder and president of defendant Crown Building and Development, Inc. Plaintiffs hired Melvin McCullough, a professional process server/private detective, to serve the summons and complaint. McCullough executed an affidavit of service on July 14, averring that he served Christenson personally on July 1. Defendants failed to file an answer, and a default was entered on July 25. On August 5, defendants filed a motion to set aside the default, asserting that the trial court did not have personal jurisdiction over them because plaintiffs failed to effect personal service of the summons and complaint. Defendants did not file an affidavit of meritorious defense. The court held an evidentiary hearing, denied the motion to set aside the default, and granted plaintiffs' request for a default judgment. Defendants objected to the order plaintiffs submitted under MCR 2.602(B)(3), but did not appear at the hearing on the motion for entry of the judgment. The court entered the default judgment on October 15. Defendants then filed a motion to set aside the default judgment, this time including an affidavit alleging a meritorious defense and good cause why the complaint was not answered. The court denied the motion, and this appeal ensued.

II

Defendants first argue that the circuit court did not have personal jurisdiction over them because the

---

ants assert that there was an agreement to amend and extend the option period. Defendants recorded an affidavit of interest in the property. Plaintiffs demanded that defendants discharge the affidavit, and defendants refused. Plaintiffs then filed the instant action claiming slander of title and seeking to quiet title.

summons and complaint were not properly served, in that the process server failed to effect in-hand service on Christenson. Defendants further contend that because valid service was never achieved, their original motion to set aside the default should have been granted. We disagree.

The construction and interpretation of court rules is a question of law that we review de novo. *In re Gosnell*, 234 Mich App 326, 333; 594 NW2d 90 (1999). We review the circuit court's decision to enter a default for abuse of discretion. *Sturak v Ozomaro*, 238 Mich App 549, 569; 606 NW2d 411 (1999).

A

McCullough filed an affidavit and also testified at the evidentiary hearing. He asserted that he went to the address on the summons and complaint on June 30 and observed a person coming out of the office. He asked the person if he was Christenson and said that he had something for him. The person said he had no time to be bothered with McCullough, got into a white Cadillac,[2] and drove away. McCullough then went into the adjacent law office and asked about Christenson. He determined that Christenson drove a white Cadillac and that he had just left.

McCullough returned the next day and waited across the street until Christenson arrived. He then drove across the street. As he was approaching Christenson, he dropped the summons and complaint. Christenson said "you better hurry up and pick them up; you don't want them to get dirty." Christenson

---

[2] It was later clarified that the car was a white Lincoln Town Car.

then began walking much faster. McCullough picked up the summons and complaint and said, "Mr. Christenson, I've got something for you." Christenson replied: "[N]o, no, you must be mistaken. He's overseas and he won't be back for awhile." McCullough then followed Christenson to the door. Christenson entered the building and locked the door as McCullough approached. McCullough then placed the summons and complaint in the door handle and told Christenson through the door that he had been served.

Christenson denied ever having received the summons and complaint, denied having had a confrontation with McCullough in the parking lot, denied ever being within twenty-five feet of McCullough, and stated that he had no recollection of ever having a conversation with McCullough. Plaintiffs' counsel asserted that Christenson came to his office several weeks before the hearing and that he acknowledged that he had had a confrontation with the process server. Christenson denied ever being in the attorney's office. Two employees of the office later submitted affidavits attesting to Christenson's presence at the office on July 16. Plaintiffs' attorney filed the proof of service and McCullough's affidavit with the court, and also mailed a copy of the summons and complaint to defendants, on July 17, the day following the disputed visit to plaintiffs' attorney's office.

The trial court determined that Christenson lied.

B

Defendants maintain that because the summons and complaint were not served on Christenson "in

hand," service was improper and the court lacked personal jurisdiction over defendants. We disagree and conclude that service here was adequate.

MCR 2.105 provides in pertinent part:

> (A) Individuals. Process may be served on a resident or nonresident individual by
>
> (1) *delivering a summons and a copy of the complaint to the defendant personally . . . .*
>
> *     *     *
>
> (J) Jurisdiction; Range of Service; Effect of Improper Service.
>
> (1) Provisions for service of process contained in these rules are intended to satisfy the due process requirement that a defendant be informed of an action by the best means available under the circumstances. These rules are not intended to limit or expand the jurisdiction given the Michigan courts over a defendant. The jurisdiction of a court over a defendant is governed by the United States Constitution and the constitution and laws of the State of Michigan. See MCL 600.701 *et seq.*; MSA 27A.701 *et seq.*
>
> *     *     *
>
> (3) An action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within the time provided in these rules for service. [Emphasis added.]

Commentators have noted that the court rule does not specify what constitutes "delivering a summons and a copy of the complaint to the defendant personally" under MCR 2.105(A)(1). As noted in 1 Gilmore, Michigan Civil Procedure Before Trial (3d ed), § 9.10, pp 9-12:

> *The rule does not attempt to define what constitutes delivering the papers to the defendant personally. Whether*

*this has been accomplished will have to be determined on a case-by-case basis. Circumstances such as a defendant who deliberately avoids service or is unconscious or otherwise incapacitated must be considered in determining whether process has been delivered to the defendant personally.*

The requirement to deliver papers to the defendant personally should be interpreted in the context of the essential function of service, which is to give actual notice of the institution of an action. Physically leaving the summons and a copy of the complaint with the defendant in person is the generally contemplated method of personal service of process. (Earlier decisions on this subject should be read with caution because the law has changed materially. The defendant is no longer required to be shown the original papers with the seal of the court.) However, merely laying the documents on the body of a man too sick to understand their meaning is not valid service. *People ex rel Midler v Judge of the Superior Court*, 38 Mich 310 (1878). Sliding the documents under the door of the person's home is not sufficient for personal service. See *People v Featherstone*, 93 Mich App 541, 286 NW2d 907 (1979) (service of subpoena).

*Michigan courts have not decided whether a defendant can avoid service by refusing to accept the proffered papers from a process server after being told of their significance*, or whether service is complete if the documents in some way touch the defendant who has refused to accept them. [Emphasis added.]

Similarly, 1 Dean & Longhofer, Michigan Court Rules Practice (4th ed), § 2105.3, p 118, states, in pertinent part:

*MCR 2.105 wisely does not define what "delivering a copy of the complaint to the defendant personally" means, since the variety of situations that can arise will be great and some factors (such as the defendant's attempt to evade process, or ignorance on the defendant's part that what he or she has received is process) may affect the outcome.*

Nothing in the rule requires that the papers be read to the defendant, but it was held in a case applying the predecessor to MCR 2.105(A)(1) that merely sliding a subpoena under a witness's door did not satisfy service requirements. [Citing *Featherstone, supra.*]

*In determining what constitutes "delivery," the purpose of the service should always be kept in mind. There is little reason, for example, to require a process server to trick an evasive defendant into grasping the papers served. Informing the defendant of the nature of the papers, offering them to the defendant, and leaving them within the defendant's physical control ought to suffice to constitute "delivery."* On the other hand, even leaving the papers physically upon the defendant's person may not be enough if the defendant is unconscious or so incapacitated as not to realize the significance of what has been done—a principle established as long ago as 1878 in *People ex rel Midler v Superior Court Judge* [*supra.*] [Emphasis added.]

Thus, the court rule does not define or specify what constitutes "delivering a summons and a copy of the complaint to the defendant personally." Clearly, the defendant's presence and awareness is contemplated in some fashion. However, the rule does not by its terms require that the summons and complaint be delivered in hand. That is, the rule does not require that the defendant affirmatively take possession of the documents, and requiring in-hand delivery, especially where the defendant refuses to accept service or evades service, places a gloss on the court rule that is inconsistent with its purpose of achieving actual notice and complying with the requirements of due process while securing the just, speedy, and economical determination of every action. MCR 2.105(J)(1); MCR 1.105. Further, as plaintiffs point out, if in-hand delivery was intended to be required in Michigan, the term "in-hand delivery" could have been

incorporated into the court rule. See *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). Thus, construing the language of the court rule reasonably and keeping in mind the purpose of the rule, we agree, as suggested by Dean & Longhofer, *supra*, that "[i]nforming the defendant of the nature of the papers, offering them to the defendant, and leaving them within the defendant's physical control ought to [and does] suffice to constitute 'delivery.' "[3]

We further observe that an interpretation that personal service is effected when the defendant is left with the papers within his physical control, after being offered them and informed of their contents, comports with federal law. See 62B Am Jur 2d, Process, § 204; see also 4A Wright & Miller, Federal Practice and Procedure, § 1095 (1987 & 1998 Supp)

---

[3] *Mitchell v Hines*, 305 Mich 296; 9 NW2d 547 (1943), predates the current and preceding court rules. Under the then current statutory provision, it was necessary to show "the original writ to the defendant." *Id.* at 300; *see* 1929 CL 14084. The constable in *Mitchell* did not, by his own admission, show the writ to Mr. Hines. Defendants also rely on *Featherstone, supra*, which was decided under GCR 1963, 105, which provided for service on individuals by "leaving a summons and a copy of the complaint with the defendant personally." In *Featherstone*, the relevant issue was the prosecutor's due diligence in producing an endorsed res gestae witness. The witness was served before trial by sliding a subpoena under his door. Because there was no indication that the witness was, or would be, at home, this Court held that GCR 1963, 105.1 was not satisfied. While the court noted that a later in-hand service on the witness was proper, the case does not support the proposition that such service is required. The remaining cases defendants rely on do not assist in giving content to the words "delivering a summons and a copy of the complaint to the defendant personally": *Felix v Felix*, 47 Mich App 744; 209 NW2d 871 (1973) (prerequisites for substituted service), *Mason v Letts*, 14 Mich App 330; 165 NW2d 481 (1968) (complaint not served with summons), *Ooley v Collins*, 344 Mich 148; 73 NW2d 464 (1955) (the defendant's residence unknown, notice by publication only), and *Hempel v Bay Circuit Judge*, 222 Mich 553; 193 NW 281 (1923) (holding a general appearance sufficient to bind the defendants regardless of service).

and cases cited therein. Under the federal rules of civil procedure, personal service of process does not require "in-hand delivery." *Hanna v Plumer*, 380 US 460; 85 S Ct 1136; 14 L Ed 2d 8 (1965). Federal courts construing FR Civ P 4(e)(2), the federal counterpart containing the same language as MCR 2.105(A)(1), have not required in-hand delivery when a defendant refuses to accept service or attempts to evade service. See *Roth v WT Cowan, Inc*, 97 F Supp 675 (ED NY, 1951) (service was sufficient where the marshal left the papers on the seat of a defendant's vehicle); *Errion v Connell*, 236 F2d 447 (CA 9, 1956) (service was sufficient where the marshal tossed the papers through a hole in the screen door of the defendant's apartment where the defendant was hiding inside); *Int'l Controls Corp v Vesco*, 593 F2d 166 (CA 2, 1979), cert den 442 US 941; 99 S Ct 2884; 61 L Ed 2d 311 (1979) (service was sufficient where marshal threw the papers over the defendant's fence after ascertaining that the defendant lived at that address, photographed the papers on the defendant's lawn, and sent a copy of the papers to the defendant's address by first-class mail).[4]

---

[4] This interpretation of the Michigan court rule is also supported by various state courts interpreting similar court rules governing service of process. In *Nielsen v Braland*, 264 Minn 481, 484; 119 NW2d 737 (1963), the Minnesota Supreme Court, applying the Minnesota court rule providing that service of a summons and complaint shall be made "upon an individual by delivering a copy to him personally," held:

We have not had occasion to consider the question whether service is made when the defendant refuses to accept it, but it is generally held that if the process server and the defendant are within speaking distance of each other and such action is taken as to convince a reasonable person that personal service is being attempted, service cannot be avoided by physically refusing to accept the summons.[2]

² See *Kurtz v Oremland*, 29 NJ Super 585; 103 A2d 53 [1954]; *Schenkman v Schenkman*, 206 Misc 660; 136 NYS2d 405 [1954]; *Roth v WT Cowan, Inc*, 97 F Supp 675 [ED NY, 1951]; *Hatmaker v Hatmaker*, 337 Ill App 175; 85 NE2d 345 [1949].

In *Nielsen*, service was deemed sufficient where the process server touched the defendant with the summons and placed it near the defendant, who refused to pick it up or accept it.

In *Bossuk v Steinberg*, 58 NY2d 916; 460 NYS2d 509; 447 NE2d 56 (1983), the Court of Appeals of New York, interpreting a statutory provision with regard to "delivering the summons," found that delivery of a summons may be accomplished by leaving it in the "general vicinity" of the person to be served who "resists" service. In that case, the Court of Appeals found that when the person to be served refused to open the door to accept service, service was effected when the process server left the summons outside the door and stated that he was leaving the papers in that location. Similarly, in *Spector v Berman*, 119 AD2d 565; 500 NYS2d 735 (1986), the court, interpreting the same New York statutory provision, followed *Bossuk*, holding that service was effected when the defendant refused to meet the process server, who left the summons in the mail slot and told the defendant what he was doing and subsequently mailed the process to the defendant as well. In *Wood v Weenig*, 736 P2d 1053 (Utah App, 1987), the Utah Court of Appeals, interpreting a Utah civil procedure rule providing that personal service could be effected on a person fourteen years or older by "delivering a copy thereof to him personally, or by leaving said copy in his usual place of abode with some person of suitable age and discretion there residing," found valid personal service when the deputy constable left the papers on the porch after the defendant's daughter refused to accept them. In affirming the lower court's refusal to set aside a default judgment, the Utah Court of Appeals held:

> We strongly believe that personal service should not become a "degrading game of wiles and tricks" nor should a defendant be able to defeat service simply by refusing to accept the papers or instructing others, suitable under the rules of civil procedure, also to reject service. [*Id.* at 1055.]

In *Flex Credit, Inc v Winkowitsch*, 428 NW2d 236 (ND, 1988), the Supreme Court of North Dakota, interpreting a rule of civil procedure similar to MCR 2.105 providing that personal service could be effected by "delivering a copy of the summons to him personally," observed that "[i]t is well settled that when a person refuses to accept service, personal service may be effected by leaving the papers at a location, such as a table or on the floor, near that person." (Citations omitted.) In that case, the North Dakota Supreme Court held that service was sufficient when, after the defendants refused to accept service, "the deputy sheriff placed the documents in their general vicinity inside the residence and informed them he was doing so." *Id.* at 239.

C

Construing the language "delivering a summons and a copy of the complaint to the defendant personally" in MCR 2.105 to mean that personal service is effected when the defendant is left with the papers within his physical control after being offered them and informed about their contents, we conclude that the court did not err in finding that there was valid service of process in this case. The record shows that on June 30, 1997, and again on July 1, 1997, Christenson refused to accept the documents, denying who he was when asked by McCullough. On the second occasion, as McCullough approached him with the documents, Christenson accelerated his pace, went into his office, and locked the door. McCullough then

---

In *Jacobson v Garland*, 227 Ga App 81; 487 SE2d 640 (1997), the Georgia Court of Appeals, interpreting a statute with language similar to our court rule, found that service was effected when the summons was left on the ground outside the door when the defendant refused to open the door to accept it. In *Jacobson*, the Georgia Court of Appeals remarked:

It is the duty of a defendant to accept and submit to the service of process when he is aware of the process server's purpose . . . . It is generally held that if the process server and the defendant are within speaking distance of each other, and such action is taken as to convince a reasonable person that personal service is being attempted, service cannot be avoided by physically refusing to accept the summons. [*Id.* at 82 (citations omitted).]

Similarly, in *CRB v State Dep't of Family Services*, 974 P2d 931, 934 (Wy, 1999), the Supreme Court of Wyoming, addressing "the question of what constitutes delivery of 'a copy of the summons and of the complaint to the individual personally' [under that state's rule of civil procedure governing personal service of process] in a situation where the defendant is aware that service is being attempted and seeks to avoid service by refusing to open his door to accept service," held that personal service was effected where the defendant was advised that he was being served and that the summons and complaint were being placed in his mailbox after the defendant refused to open his apartment door to accept service of the papers.

affixed the summons and complaint to the door handle and told Christenson through the door that he had been served. According deference to the trial court's determination that Christenson lied at the August 27, 1997, evidentiary hearing about his encounters with the process server, the record amply establishes that Christenson wilfully sought to evade lawful service and that the summons and complaint were left within the area of his physical control after he was alerted to the fact that he was being served. Service was adequate under the court rule.

III

Defendants next assert that the circuit court erred in denying their motion to set aside the default judgment because the court failed to exercise discretion, the request for default judgment was never properly noticed for hearing, and defendants established good cause and a meritorious defense establishing a substantial defect or irregularity in the proceedings as well as manifest injustice. We find these assertions to be without merit. We review for abuse of discretion the circuit court's denial of the motion. *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227; 600 NW2d 638 (1999).

We first reject defendants' argument that the court failed to recognize its discretion in the matter. The court did not deny the motion solely on the basis of untimeliness; rather, the court also determined that defendants had failed to show good cause. Thus, the court appears to have exercised the discretion inherent in the good-cause determination.

Defendants' argument that plaintiffs did not give proper notice of their request for entry of default judgment is also without merit. Plaintiffs made the original request in their response to defendants' motion to set aside the default. Defendants base their argument on the lack of a motion praecipe from plaintiffs. Defendants had filed a praecipe for their motion to set aside the default. *See* 6th Circuit LCR 2.119. Plaintiffs responded to that motion by arguing that service was proper, that the default was proper, and that the motion to set aside the default was inadequate because it failed to show good cause and lacked an affidavit of meritorious defense, and plaintiffs additionally requested the entry of a default judgment. Plaintiffs' response included as part of its title "request for default judgment." The matter was set for hearing on defendants' praecipe, and after the court rejected defendants' request to set aside the default, plaintiffs' request for entry of default judgment was entertained by the court. The circuit court did not err in concluding that plaintiffs' response to defendants' motion provided defendants with adequate notice that plaintiffs opposed the relief sought by defendants and intended to pursue a default judgment with the court at the August 27 hearing on defendants' motion.

Defendants also assert that the lack of personal service constituted good cause to set aside the default. MCR 2.603(D)(1). As discussed above, this issue is without merit.

Defendants further assert that they were entitled to relief because they established good cause and a meritorious defense, and because they established manifest injustice. We conclude the circuit court did not

abuse its discretion in denying the motion to set aside default judgment.

MCR 2.603(D) provides in pertinent part:

> (D) Setting Aside Default.
>
> (1) A motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant,[5] shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed.

Michigan law generally disfavors setting aside default judgments that have been properly entered. *Alken-Ziegler, supra* at 229. In *Alken-Ziegler, id.* at 231-234, the Supreme Court explained that the "good cause" and "meritorious defense" requirements of MCR 2.603(D)(1) are analytically different concepts and that a party must show both in order to prevail on a motion to set aside a default judgment. Good cause is established by (1) a procedural irregularity or defect, or (2) a reasonable excuse for not complying with the requirements that created the default. *Alken-Ziegler, supra* at 233. Manifest injustice is *not* a third form of good cause that excuses a failure to comply with the court rules where there is a meritorious defense. *Id.* Rather, it is the result that would occur if a default were not set aside where a party has satisfied the "good cause" and "meritorious defense" requirements of the court rule. *Id.* While a lesser showing of good cause will suffice where the meritorious defense is strong, good cause must still be shown in order to prevent a manifest injustice.

---

[5] As discussed earlier, we reject defendants' argument that the court lacked jurisdiction over defendants.

The circuit court did not abuse its discretion in concluding that good cause was not shown. Defendants' reliance on the issues of the praecipe and the service is misplaced. There were no real procedural defects, and defendants' reliance on the belief that there were was not reasonable.

Defendants also contend that they should have relief from the judgment under MCR 2.612. We disagree. The *Alken-Ziegler* Court cautioned that the "any other reason justifying relief" grounds of MCR 2.612(C)(1)(f) should not be read so as to obliterate the Court's analysis regarding MCR 2.603(D)(1). *Alken-Ziegler, supra* at 234, n 7. In asserting manifest injustice under MCR 2.612, defendants have merely repeated the arguments for relief under MCR 2.603; defendants have identified no extraordinary circumstances that would have required the circuit court to grant relief under MCR 2.612 notwithstanding the provisions and policy of MCR 2.603.

Affirmed.