*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANDREW JAMES GERDES,

UNPUBLISHED
October 21, 2025
Plaintiff-Appellee,
10:29 AM

v

No. 370578
Ingham Circuit Court
LINDA SUE GERDES,
LC No. 23-002704-DO

Defendant-Appellant.

Before: GARRETT, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

The trial court entered a default against defendant, Linda Sue Gerdes, after her attorney failed to appear at a pretrial conference. The court refused to set aside the default and thereafter entered a default judgment of divorce. Linda appeals by right the default judgment of divorce, arguing that the court erred by defaulting her without first considering lesser sanctions and that the court exhibited favoritism because it did not sanction plaintiff, Andrew James Gerdes, when his attorney failed to timely appear at a pretrial conference. Linda also challenges the property distribution, which awarded Andrew a commercial building capable of generating future rental income. We conclude that the trial court did not abuse its discretion by entering the default when neither Linda nor her attorney appeared at the pretrial conference, and the scheduling order notified the parties that failure to appear may result in an order of default. We also conclude that the property distribution was equitable. Accordingly, we affirm.

## I. FACTS AND PROCEEDINGS

Andrew filed a complaint for divorce after 34 years of marriage. The trial court entered a scheduling order setting a pretrial conference for November 28, 2023 at 8:30 a.m., and trial for January 10, 2024 at 8:30 a.m. The scheduling order required the parties themselves to be present at the pretrial conference unless the trial court waived their presence. The order further stated, "Failure of a party to appear in person or through counsel at any scheduled proceedings, including pre-trial or trial, except for good cause shown, shall be grounds for the entry of an order of default . . . ."

-1-

At the November 28, 2023 pretrial conference, Andrew's attorney appeared via Zoom, but Andrew failed to appear. His attorney explained that there had been a "calendaring snafu" at her office and offered to contact Andrew. The trial court responded, "It's fine, Ms. Alane. It's a pretrial conference." Because Linda's attorney requested that discovery be extended, the court changed the January 10, 2024 trial to a second pretrial conference and adjourned the trial date.

On December 29, 2023, the trial court entered an order permitting Linda's attorney to withdraw. The order stated that "Linda S. Gerdes shall be In Pro Per" and directed that all pleadings and correspondence be mailed to her home address. Linda failed to appear at the January 10, 2024 pretrial conference. Andrew's attorney informed the court that attorney Stephanie Koorndyk e-mailed her two days previously and asked whether the proceeding on January 10, 2024, was a trial. Counsel stated that Koorndyk then indicated that she became aware that the proceeding was a pretrial and told Andrew's attorney that she expected to represent Linda in the case. The court noted that Koorndyk had not filed an appearance and that, pursuant to the scheduling order, Linda was in default. Andrew's attorney responded affirmatively when the court asked whether she wished to proceed with the default. Andrew submitted a proposed order of default under the seven-day rule set forth in MCR 2.602(B)(3). The trial court entered an order of default after Linda failed to file objections to the proposed order.

Thereafter, Linda, represented by attorney Valerie M. Smulders,[1] moved for reconsideration. Smulders stated that Linda forwarded to her several e-mails from her previous attorney, including a notice of trial for a January 10, 2024 trial at 9:00 a.m. and an e-mail indicating that a pretrial, instead of a trial, would occur on that date. Smulders asserted that Koorndyk arrived at 9:00 a.m. on January 10, 2024, and was informed that the case had been called at 8:30 a.m. and that Linda had been defaulted for failing to appear. Smulders argued that Linda could be subjected to an uneven asset allocation if she was not able to negotiate the terms of the property division.[2]

The trial court entered an order stating that Linda's motion was procedurally improper, and that, instead, Linda should have objected to Andrew's proposed order submitted under the seven-day rule. The court indicated that it would treat Linda's motion as a motion to set aside the default and scheduled a hearing.

In response to the motion, Andrew denied that the court had ever sent a notice of trial indicating a January 10, 2024 trial at 9:00 a.m. He asserted that the scheduling order and the register of actions reflected an 8:30 a.m. start time for trial and that the register of actions also reflected an 8:30 a.m. start time for the January 10, 2024 pretrial after the trial on that date was changed to a pretrial. Andrew attached to his motion an e-mail that Linda's former attorney sent

---

[1] Attorneys Smulders and Koorndyk are from the same law practice.

[2] Under MCR 3.210(B)(2)(c), a defaulted party "may not proceed with the action until the default has been set aside . . . ." MCR 3.210(B)(2)(d) grants the trial court discretion to permit a defaulted party to participate in the proceeding, but states that the court "may impose conditions or limitations on the defaulted party's participation."

to Linda[3] informing her in bold print of the second pretrial scheduled for 8:30 a.m. on January 10, 2024. Andrew argued that Linda failed to establish good cause to set aside the default as MCR 3.210(B)(3) required because arriving late to a pretrial conference does not constitute good cause. He also disputed as implausible the claim that Linda forwarded to Koorndyk an e-mail she received from her previous attorney indicating that the pretrial was scheduled to begin at 9:00 a.m. Andrew noted that Smulders did not attach the e-mail to her motion. Finally, Andrew denied that Linda was at risk of an uneven asset allocation as a result of the default.

At the hearing on Linda's motion, Smulders stated that a staff member of her firm called the courthouse before the January 10, 2024 pretrial conference to ensure that the proceeding scheduled for that day was not a trial. Smulders stated that a courthouse employee indicated that a pretrial was scheduled to begin at 9:00 a.m. She admitted that nobody from her firm had contacted the trial court's chambers to verify the time of the proceeding. She also admitted that their failure to appear "was just clear error on our part." Smulders was unable to produce the e-mail from Linda's previous attorney that purportedly contained the notice of trial for 9:00 a.m. and denied receiving the e-mail that Linda's previous attorney sent Linda informing her in bold print of the 8:30 a.m. start time for the second pretrial. In addition, when asked why Linda failed to appear at the pretrial, Smulders responded that Linda was on her way to the courthouse when the court called the case at 8:30 a.m.

Andrew argued that Smulders's assertions were incredible and contradictory. He pointed out that her motion failed to mention that a staff member from her office contacted the courthouse. He also maintained that Koorndyk e-mailed his attorney and stated that she had reviewed the register of actions and observed that the January 10, 2024 proceeding was a pretrial rather than a trial. Andrew argued that if Koorndyk reviewed the register of actions, which reflected the 8:30 a.m. start time, she would have been aware of the start time. Andrew further asserted that negligence did not constitute good cause to set aside a default.

The trial court denied Linda's motion on the basis that she failed to provide a reasonable excuse for failing to appear at the pretrial conference. The court stated that it checked the register of actions before calling the case on January 10, 2024, to determine whether an appearance on Linda's behalf had been filed because the court previously allowed Linda's former attorney to withdraw. The court also stated that Linda had notice of the date and start time of the pretrial because the matter was discussed at the November 28, 2023 pretrial, Linda's previous attorney e-mailed her regarding the start time, and the scheduling order reflected the start time. In addition, the register of actions reflected the 8:30 a.m. start time and did not indicate that the pretrial was scheduled to begin at 9:00 a.m. The court noted that Smulders's office did not contact the court's chambers to determine the start time, but rather, called the circuit court's general phone number. The court opined that Linda failed to establish good cause or cite authority to set aside the default and failed to provide a reasonable excuse for failing to appear.

Meanwhile, Andrew moved for entry of a default judgment and provided a proposed default judgment of divorce with his motion. At a hearing on the motion, the parties indicated that

---

[3] Andrew stated that Linda had forwarded the e-mail to him.

they had reached an agreement regarding the distribution of all of the marital property with the exception of a commercial office building (the Alpha building) that the parties' property holding company, Alpha Building, LLC, owned and in which Andrew's bankruptcy law practice was located. The proposed default judgment of divorce awarded Linda her business as well as the marital home and awarded Andrew Alpha Building, LLC. Linda maintained that the property division was inequitable because the Alpha building would generate rental income in the future.

Andrew testified that the value of the Alpha building was listed as $611,352 on the asset spreadsheet that he provided to the court. He arrived at that figure using the income-producing methodology for valuing an income-producing property, which is to divide the net operating income by a capitalization rate. He determined the net operating income by referencing a Quickbooks report and consulting Steve Slater, a commercial real estate agent, who confirmed Andrew's methodology. Andrew testified that Linda spoke to Slater as well and did not dispute the value of the Alpha building after speaking with Slater. The net revenue of the building in 2023 was $55,000.[4]

The trial court permitted Koorndyk to question Andrew. After consulting with Linda, Koorndyk stated that she had only one question and asked Andrew how he factored future profits into his calculation. He responded:

> That's what the capitalization rate accomplishes. The use of the capitalization rate is a reflection of the rate of return that an investor would demand, and so the value—you can either start with value and apply the rate and determine the revenue, or you can work backwards to solve for the missing item. So, using this formula, the revenue—the net revenue—net operating income, I should say, with a capitalization rate calculation reflects the value. It's inherent in the whole value, which is the ability—what somebody would pay for the building.

> In theory, somebody would pay $611,000 for the right to have this stream of income . . . . So it's factored into the value, and then, you know, a portion—obviously, that comes into the total marital estate, and that's it.

The trial court accepted Andrew's valuation of the Alpha building and opined that awarding Linda future rents would not be equitable because Andrew would be solely responsible for necessary maintenance and repairs to the building. The court stated that the spreadsheet that Andrew provided split the parties' assets 50-50, which was "a very fair and equitable" property distribution, particularly in light of Linda's receipt of the marital home, valued at $568,500. The court entered a default judgment of divorce that divided the parties' property in accordance with the marital asset spreadsheet. This appeal followed.

## II. DEFAULT

Linda argues that the trial court abused its discretion by defaulting her, and refusing to set aside the default, because her attorney arrived 30 minutes late to the pretrial conference. We

---

[4] It appears that the Alpha building is the only substantial asset that Alpha Building, LLC owns.

review for an abuse of discretion a trial court's decision to enter a default. *Barclay v Crown Bldg & Dev, Inc*, 241 Mich App 639, 642; 617 NW2d 373 (2000). We also review for an abuse of discretion the trial court's decision denying a motion to set aside a default. *Shawl v Spence Bros, Inc*, 280 Mich App 213, 218; 760 NW2d 674 (2008). An abuse of discretion occurs when the trial court's "decision falls outside the range of reasonable and principled outcomes." *Berryman v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019).

"[A]lthough the law favors the determination of claims on the merits . . . the policy of this state is generally against setting aside defaults and default judgments that have been properly entered." *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 229; 600 NW2d 638 (1999). MCR 3.210(B) governs defaults and default judgments in domestic-relations cases. MCR 3.210(B)(1). MCR 3.210(B)(3) states that "[a] motion to set aside a default, except when grounded on lack of jurisdiction over the defendant or subject matter, shall be granted only upon verified motion of the defaulted party showing good cause." "Good cause sufficient to warrant setting aside a default or a default judgment may be shown by (1) a substantial procedural defect or irregularity or (2) a reasonable excuse for the failure to comply with the requirements that created the default." *Koy v Koy*, 274 Mich App 653, 658; 735 NW2d 665 (2007). Whether a party has established good cause is determined based on the totality of the circumstances. *Shawl*, 280 Mich App at 236-237.

Linda argues that the trial court demonstrated favoritism by defaulting her when her attorney arrived 30 minutes late to the January 10, 2024 pretrial conference, but did not sanction Andrew when his attorney arrived late for the November 28, 2023 pretrial conference. Initially, we note that it is unclear what occurred on the morning of November 28, 2023 before the pretrial conference began. The record indicates that the trial court called the case at 8:38 a.m. and that Andrew was not present or participating via Zoom. Andrew's attorney participated via Zoom and apologized for a "calendaring snafu" at her office. She indicated that the case was on her calendar for the following week. Although not reflected in the record, Linda's assertion that someone contacted Andrew's attorney by phone to alert her of the proceeding is reasonable.

On January 10, 2024, neither Linda nor her attorney appeared at the pretrial conference. The trial court checked the register of actions before calling the case to ascertain whether an attorney representing Linda had filed an appearance because the court previously allowed Linda's attorney to withdraw. Seeing that no appearance had been filed, the court called the case. The order allowing Linda's attorney to withdraw stated, "Linda S. Gerdes shall be In Pro Per" and directed that future correspondence and pleadings be mailed to Linda's home address. Linda, however, failed to appear at the January 10, 2024 pretrial, and the pretrial concluded before Koorndyk arrived. Therefore, Koorndyk did not merely arrive late for the conference; rather, she failed to appear at the conference altogether. Moreover, Koorndyk did not file an appearance until 8:57 a.m. that day, after the conference concluded. Although Linda contends that the trial court engaged in favoritism toward Andrew's local attorney by defaulting Linda while imposing no sanction on Andrew, the record does not substantiate that presumption.

Linda also argues that the trial court erred by imposing "the harshest sanction possible" without first considering lesser alternatives. She relies on *Draggoo v Draggoo*, 223 Mich App 415, 423-424; 566 NW2d 642 (1997), and *Frankenmuth Mut Ins Co v ACO, Inc*, 193 Mich App 389, 396-397; 484 NW2d 718 (1992), both of which state that a court should evaluate other options

on the record before imposing the harsh sanction of a default *judgment*. Linda, however, did not move to set aside the default judgment, and the dispute below pertained to entry of the default, not the default judgment. Pursuant to MCR 2.401(G)(2):

> The court shall excuse a failure to attend a conference or to participate as directed by the court, and shall enter a just order *other than one of default* or dismissal, if the court finds that
>
> (a) entry of an order of default or dismissal would cause manifest injustice; or
>
> (b) the failure was not due to the culpable negligence of the party or the party's attorney.
>
> The court may condition the order on the payment by the offending party or attorney of reasonable expenses as provided in MCR 2.313(B)(2). [Emphasis added.]

In light of Linda's status as a self-represented litigant at the January 10, 2024 pretrial conference, the trial court should have considered whether the default would cause manifest injustice, but it did not. The court's failure to consider this question, however, does not constitute an abuse of discretion, and Linda was able to seek relief under MCR 3.210(B)(3) via a verified motion setting forth good cause to set aside the default. The court noted that Linda failed to object to entry of the default after Andrew's attorney submitted a proposed order under the seven-day rule. Instead of objecting to the proposed order, Smulders filed a motion for reconsideration, which the trial court determined was procedurally improper and treated as a motion to set aside the default.

The trial court properly determined that Linda failed to establish good cause to set aside the default because she failed to provide a reasonable excuse for failing to appear at the pretrial conference.[5] The court noted that the scheduling order explicitly stated that a party's failure to appear in person or through counsel, except for good cause shown, would constitute grounds for a default. The record also establishes that Linda's previous attorney e-mailed her regarding the January 10, 2024 pretrial conference and indicated the time and date of the conference in bold print. The time and date of the conference also appeared on the scheduling order although the date was listed as the trial date.

In addition, Koorndyk contacted Andrew's attorney a few days before the conference to determine whether the proceeding was a pretrial conference or trial and indicated in a subsequent communication that she discovered from reviewing the register of actions that the proceeding was

---

[5] A party may establish good cause to set aside a default by showing either "(1) a substantial procedural defect or irregularity or (2) a reasonable excuse for the failure to comply with the requirements that created the default." *Koy*, 274 Mich App at 658. Notably, the trial court treated Linda's motion for reconsideration as a motion to set aside the default at the March 26, 2024 hearing and found no procedural defect or irregularity and no reasonable excuse for failing to appear at the January 10, 2024 pretrial conference. *Id*. at 658, 660-661. Finding no good cause or basis to set aside the default, the trial court properly denied Linda's motion. *Id*.

a pretrial conference. Although Smulders maintained that a firm employee called the circuit court and was told that the proceeding started at 9:00 a.m., nobody called the trial court's chambers to verify that information, which conflicted with the start time stated in the register of actions. Further, Smulders stated in her motion that "a bunch of e-mails" from Linda's previous attorney included a notice of trial for January 10, 2024 at 9:00 a.m., but she never produced the notice of trial, and trial was never scheduled to begin at 9:00 a.m. Considering the circumstances presented, the trial court did not abuse its discretion by determining that Linda failed to provide a reasonable excuse for her failure and her attorney's failure to appear at the pretrial conference. Consequently, she has not established good cause to set aside the default.

## III. PROPERTY DIVISION

We review for clear error a trial court's factual findings with respect to property division in a divorce proceeding. *Hodge v Parks*, 303 Mich App 552, 554; 844 NW2d 189 (2014). "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). "If the trial court's findings of fact are upheld, this Court must decide whether the trial court's dispositional ruling was fair and equitable in light of those facts." *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008). We will reverse only if we are "definitely and firmly convinced that the disposition is inequitable." *Hodge*, 303 Mich App at 555 (quotation marks and citation omitted).

Linda argues that the property division was inequitable because Andrew received a future income stream of approximately $55,000 per year while she received a house that does not produce future income. She fails to establish that the property distribution was inequitable. The marital asset spreadsheet and default judgment of divorce show that the values of the marital assets were added together and split evenly with Linda owing Andrew an equalization payment because the value of the assets awarded to her exceeded the value of the assets awarded to him. Although Linda contends that the property division was inequitable because Andrew received a future income stream of $55,000 per year, the income-producing capability of the Alpha building was factored into its present value. "The income-capitalization approach measures the present value of the future benefits of property ownership by estimating the property's income stream and its resale value (reversionary interests) and then developing a capitalization rate which is used to convert the estimated future benefits into a present lump-sum value." *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland*, 437 Mich 473, 485 n 20; 473 NW2d 636 (1991). Accordingly, Linda's argument is unavailing.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney

-7-