# STATE OF MICHIGAN

# COURT OF APPEALS

---

JESSE MARCUS SPICA,

        Plaintiff-Appellee,

v

KEVIN J. SCHROTENBOER, LOIS MAXINE
SCHROTENBOER,

        Defendants-Appellants

and

KALES, INC,

        Defendant.

UNPUBLISHED
March 12, 2015

No. 317510
Kent Circuit Court
LC No. 11-008456-NI

---

Before: M. J. KELLY, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

In this personal injury action arising from an automobile accident, defendants Kevin Schrotenboer and Lois Schrotenboer appeal as of right from the judgment entered in favor of plaintiff Jesse Spica in the amount of $750,000. Because the trial court did not abuse its discretion in refusing to set aside the defaults entered against defendants and because the award of $750,000 in noneconomic damages was not clearly erroneous, we affirm.

In the early morning hours of June 26, 2011, plaintiff was walking westbound on 11 mile Road NE in Courtland Township, MI. At that time, he was struck by a vehicle driven by Kevin. The vehicle in question was owned by Kevin's mother, Lois. Both Kevin and plaintiff had been drinking the night of the accident. Kevin, a karaoke operator at a local bar, Kales, Inc., was driving home with a blood alcohol content of 0.10. Plaintiff, who was a twenty-year-old pedestrian at the time of the accident, had a blood alcohol content of 0.255. As a result of the accident, plaintiff suffered numerous injuries and Kevin faced criminal charges involving operating a motor vehicle while intoxicated causing serious injury, MCL 257.625(5)(a).

-1-

On September 6, 2011, plaintiff filed the present civil suit against Kevin, Lois, and Kales, Inc.[1]  Relevant to Lois and Kevin, plaintiff's complaint asserted three claims:  (1) negligence against Kevin involving allegations that Kevin's operation of the vehicle violated several criminal codes, (2) ownership liability against Lois, MCL 257.401, and (3) negligent entrustment against Lois, MCL 257.625(1).  Neither Kevin nor Lois responded to plaintiff's complaint, and in October of 2011, defaults entered against both Kevin and Lois.

Approximately a year later, plaintiff filed a motion for entry of default judgment and requested an evidentiary hearing on the issue of damages.  Kevin and Lois objected to plaintiff's motion for entry of default judgment and moved the trial court to set aside their defaults.  The trial court denied their motion, finding that they had not demonstrated the good cause required by MCR 2.603(D)(1).  Thereafter, the trial court conducted an evidentiary hearing, during which it heard testimony from plaintiff and his parents pertaining to plaintiff's injuries.  Medical records, photographs of plaintiff's injuries in the hospital, and life expectancy tables were also introduced into evidence by plaintiff.

Following the evidentiary hearing, the trial court rejected defendants' assertion of comparative negligence by plaintiff, and determined that the accident did not occur on the travelled portion of the road, but rather that Kevin drove off the road and hit plaintiff who was walking in the "weeds."  Based on plaintiff's injuries and the testimony regarding his pain and suffering, the trial court awarded $400,000 in initial noneconomic damages, from the time of the accident to the time of the hearing, and $350,000 in future noneconomic damages.  When awarding future damages the trial court specified that it had accounted for a reduction to present value.  Defendants now appeal as of right.

Defendants first argue that the trial court abused its discretion in refusing to set aside the defaults entered against them in October of 2011.  In particular, they maintain that they demonstrated both good cause and the existence of a meritorious defense as required to set aside a default under MCR 2.603(D)(1).

On appeal, we review a trial court's decision on a motion to set aside a default for a clear abuse of discretion.  *Shawl v Spence Bros, Inc*, 280 Mich App 213, 220; 760 NW2d 674 (2008).  An abuse of discretion "involves far more than a difference in judicial opinion."  *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227; 600 NW2d 638 (1999).  Instead, an abuse of discretion will be found "only when the trial court's decision is outside the range of reasonable and principled outcomes."  *Shawl*, 280 Mich App at 220-221 (citation omitted).

The relevant court rule for setting aside a default is MCR 2.603(D), which states, in pertinent part, that:

---

[1] Kales, Inc was dismissed from the lawsuit with prejudice and it is not a party to this appeal.

(1) A motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and an affidavit of facts showing a meritorious defense is filed.[2]

In other words, pursuant to MCR 2.603(D)(1), to set aside a default, there must be "both good cause, i.e., a reasonable excuse for the failure to answer, and a meritorious defense." *Saffian v Simmons*, 477 Mich 8, 14; 727 NW2d 132 (2007). The burden of demonstrating good cause and a meritorious defense falls on the defaulting party. *Id.* at 15.

To demonstrate good cause, the defaulting party must show either: "(1) a procedural irregularity or defect, or (2) a reasonable excuse for not complying with the requirements that created the default." *Barclay v Crown Bldg & Dev, Inc*, 241 Mich App 639, 653; 617 NW2d 373 (2000). Ordinarily, an attorney's negligence is attributable to the client and such negligence "does not constitute grounds for setting aside a default judgment." *Park v American Casualty Ins Co*, 219 Mich App 62, 67; 555 NW2d 720 (1996). Regarding a meritorious defense, MCR 2.603(D)(1) "requires an affidavit of facts establishing a meritorious defense." *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 392; 808 NW2d 511 (2011). The affiant must have "personal knowledge of the facts, state admissible facts with particularity, and show that the affiant can testify competently to the facts set forth in the affidavit." *Id.*

Notably, "good cause" and "meritorious defense" are separate inquiries, *Barclay*, 241 Mich App at 653, and "[i]t is important that the 'good cause' and 'meritorious defense' elements of a motion to set aside be considered separately." *Zaiter v Riverfront Complex, Ltd*, 463 Mich 544, 553 n 9; 620 NW2d 646 (2001). Nonetheless, it has been recognized that there is "some interplay between the two[.]" *Shawl*, 280 Mich App at 237. Specifically, "if a party states a meritorious defense that would be absolute if proven, a lesser showing of 'good cause' will be required than if the defense were weaker, in order to prevent a manifest injustice." *Alken-Ziegler, Inc*, 461 Mich at 233-234. However, this notion of "manifest injustice" may not be construed as "a third form of good cause that excuses a failure to comply with the court rules where there is a meritorious defense." *Barclay*, 241 Mich App at 653. "Rather, manifest injustice is the result that would occur if a default were to be allowed to stand where a party has satisfied the 'meritorious defense' and 'good cause' requirements of the court rule." *Alken-Ziegler, Inc*, 461 Mich at 233. In other words, "[w]hile a lesser showing of good cause will suffice where the meritorious defense is strong, *good cause must still be shown* in order to prevent a manifest injustice." *Barclay*, 241 Mich App at 653 (emphasis added). Consequently, it is not necessary to reach the meritorious defense inquiry where a party fails to make a showing of good cause. See *Zaiter*, 463 Mich at 553 n 9. See, e.g., *Midwest Mental Health Clinic, PC v Blue Cross & Blue Shield of Mich*, 119 Mich App 671, 675; 326 NW2d 599 (1982).

In the present case, regarding good cause, defendants assert that good cause exists for their failure to respond because: (1) Lois does not recall receiving the complaint and summons,

---

[2] MCR 2.603(D)(3) states that, in addition, "the court may set aside a default and a default judgment in accordance with MCR 2.612." In this case, however, defendants arguments are premised on MCR 2.603(D)(1) and MCR 2.612 is inapplicable.

(2) plaintiff delayed a year between the entry of defaults and his motion for entry of default judgment, and (3) Kevin's defense attorney in his criminal proceedings misadvised them regarding the civil proceedings. In addition, they allege the existence of meritorious defenses, namely plaintiff's purported contributory negligence, which they assert entitles them to make a lesser showing of good cause. Each of defendants' arguments is without merit.

First, while Lois maintains she does not remember being served with the complaint, she does not, however, actually allege any defect with the service or process, nor does she actually deny that the service occurred. To the contrary, the proofs of service in this case plainly show that Kevin and Lois were properly served with the summons and complaint, and yet they failed to respond as required by MCR 2.108(A)(1). Lois's lack of memory regarding these events does not amount to a procedural irregularity or otherwise excuse her failure to respond.

Second, defendants are mistaken in their assertion that plaintiff's delay in seeking a default judgment somehow establishes a procedural irregularity which entitled them to set aside their defaults. The defaults establishing defendants' liability entered in October of 2011 and it is these defaults regarding their liability which defendants now seek to set aside. Although it is true that plaintiff waited a year before seeking a default judgment regarding the issue of damages, this delay *after* the entry of defaults does not render those defaults improper or irregular. Instead, it appears that defendants mistakenly conflate the defaults relating to the issue of liability with the issue of damages, when in fact these are two separate inquiries. See generally *White v Sadler*, 350 Mich 511, 517, 520-521; 87 NW2d 192 (1957); *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 79; 618 NW2d 66 (2000). We simply cannot see how plaintiff's delay in seeking a judgment on the issue of damages somehow rendered irregular previously entered defaults regarding the question of defendants' liability or otherwise excuses defendants' failure to respond to plaintiffs' complaint. In short, such delay does not constitute good cause for setting aside the defaults under MCR 2.108(A)(1).

Third, defendants have not shown good cause based on the purported misadvice they received from Kevin's defense attorney. In particular, according to Kevin's affidavit, he discussed the civil matter with his criminal defense attorney and his attorney informed him that "the civil case would be handled after completion of the criminal case." Kevin then informed Lois of this advice. Both defendants averred that after receiving notice of plaintiff's motion to enter a default judgment, Kevin spoke with his attorney and "learned that the information from [the] criminal attorney was wrong or that [Kevin] misunderstood the matter."

Considering the explanation provided in defendants' affidavits, as a factual matter, defendants' argument lacks merit because it is not entirely clear precisely what advice was offered by Kevin's attorney or that defendants' failure to respond can be attributed to this advice. Simply stating that the civil case would be handled after the criminal case is not tantamount to instructing Kevin not to answer the complaint. Moreover, there is no evidence from Kevin's criminal attorney, such as an affidavit, verifying this alleged conversation or the substance of his or her advice. This lack of information regarding the conversation is particularly problematic because, although defendants suggest that the attorney may have provided misinformation, both Kevin and Lois also acknowledge that it could be that *Kevin* "misunderstood the matter." It might well be then that Kevin's misunderstanding, not misinformation from the attorney, led to defendants' failure to respond. On this record, defendants have not presented sufficient evidence

to support their version of events and they have thus failed to demonstrate good cause. See *Saffian*, 477 Mich at 15. And, in any event, even assuming misinformation from Kevin's criminal attorney, "[a]n attorney's negligence is attributable to the client and normally does not constitute grounds for setting aside a default judgment." *Park*, 219 Mich App at 67. See also *Amco Builders & Developers, Inc*, 469 Mich at 96. Consequently, defendants may not rely on purported mistakes by Kevin's criminal defense attorney as a basis for establishing good cause. See *Park*, 219 Mich App at 67.

In sum, defendants have not demonstrated good cause for their failure to respond to plaintiff's complaint. Because defendants have not demonstrated good cause, there can be no manifest injustice in the trial court's denial of their motion to set aside the defaults and we find it unnecessary to address whether defendants' affidavits evidenced the existence of a meritorious defense. See *Zaiter*, 463 Mich at 553 n 9; *Barclay*, 241 Mich App at 653. Instead, given that defendants have failed to demonstrate good cause, we conclude that the trial court did not abuse its discretion in refusing to set aside the defaults under MCR 2.603(D)(1). See *Barclay*, 241 Mich App at 653.

On appeal, defendants next argue that the trial court's award of $750,000 in damages was clearly erroneous. In particular, they maintain that the award was speculative and excessive because plaintiff failed to offer medical testimony or otherwise adequately establish the extent of his injuries. In the absence of medical testimony, defendants contend that there was no proof that plaintiff's injuries resulted from the accident or that these injuries were ongoing and permanent so as to justify an award of future damages. Lastly, defendants maintain that the trial court clearly erred by failing to reduce the award of future damages to gross present cash value as required by MCL 600.6306(1)(e).

We review an award of damages following an evidentiary hearing for clear error. *Woodman v Miesel Sysco Food Serv Co*, 254 Mich App 159, 190; 657 NW2d 122 (2002). Under this standard, this Court will not "set aside a nonjury award merely on the basis of a difference of opinion." *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002) (citation omitted). Rather, "[c]lear error exists only when the appellate court is left with the definite and firm conviction that a mistake has been made." *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471; 719 NW2d 19 (2006) (quotation marks and citation omitted).

In Michigan, "tort damages generally include the damages that naturally flow from the injury, which may include both economic damages, such as damages incurred due to the loss of the ability to work and earn money, as well as noneconomic damages, such as pain and suffering and mental and emotional distress damages." *Hannay v Dep't of Transp*, __ Mich __, __; __ NW2d __ (2014), slip op at 18. "Damages are an issue of fact, and questions of fact are, of course, generally decided by the trier of fact." *McManamon v Redford Twp*, 273 Mich App 131, 141; 730 NW2d 757 (2006). The party asserting the claim bears the burden of proving damages with reasonable certainty. *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 634; 769 NW2d 911 (2009). Thus, damages based on speculation or conjecture are not recoverable. *Id.* Damages are not speculative, however, merely because they cannot be proven with mathematical certainty; and, once liability has been established, less certainty as to the amount of damages is required. *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 525; 687 NW2d 143 (2004).

Noneconomic damages in particular include "past and future disability and disfigurement, shame and mortification, mental pain, and anxiety, annoyance, discomfiture, and humiliation, denial of social pleasure and enjoyments, and fright and shock." *May v William Beaumont Hosp*, 180 Mich App 728, 758; 448 NW2d 497 (1989) (internal citations omitted).[3] When assessing noneconomic damages, it should be remembered that "a dollar amount can never truly be placed on an individual's pain and suffering," and consequently, noneconomic damages are an "imprecise" means of compensation. *Freed v Salas*, 286 Mich App 300, 334, 336; 780 NW2d 844 (2009). Moreover, "no two persons sustain the same injury or experience the same suffering." *Id.* at 336, quoting *Precopio v Detroit*, 415 Mich 457, 471; 330 NW2d 802 (1982). Consequently, "no two cases precisely resemble each other, especially where noneconomic damages are involved . . . ." *May*, 180 Mich App at 758. For this reason, although comparisons among cases may sometimes prove helpful when contemplating the appropriateness of a noneconomic damages award, "[a]n appellate court should not attempt to reconcile widely varied past awards for analogous injuries which in the abbreviated appellate discussion of them seem somewhat similar." *Freed*, 286 Mich App at 336, quoting *Precopio*, 415 Mich at 471.[4]

In terms of the proof necessary to establish damages, although a lay witness may not testify regarding contested medical issues beyond the scope of his or her lay knowledge, *Howard v Feld*, 100 Mich App 271, 273; 298 NW2d 722 (1980), an injured party may testify to facts within his or her knowledge, including the existence of a physical injury, *Gibson v Traver*, 328 Mich 698, 702; 44 NW2d 834 (1950). See also MRE 701. Likewise, "expert testimony is not required to establish pain, suffering, inconvenience, and other such elements of noneconomic damage because they are within the purview of common knowledge." *Young v Nandi*, 276 Mich App 67, 77; 740 NW2d 508 (2007), vacated in part on other grounds 482 Mich 1007 (2008). Given a plaintiff's ability to testify regarding his or her injuries and suffering, medical testimony is also "not necessary to prove future pain and suffering where the nature of the injury is such that nonexpert witnesses can plainly see or can infer from the injury that there will be future pain and suffering, or where the nature of the injury, its duration, and lack of recovery at the time of

---

[3] On appeal, defendants assert that the trial court did not specify the nature of the damages awarded, meaning it is uncertain whether the damages were noneconomic in nature. The trial court record, and in particular the trial court's explanation of the damage award, makes plain, however, that the damages were those to compensate for plaintiff's emotional and mental distress as well as his pain and suffering relating to his physical injuries. This was an award of noneconomic damages, while in contrast there is no indication that the trial court awarded economic damages such as work-loss or payment for medical expenses. See generally *Hannay*, slip op at 18; *May*, 180 Mich App at 758.

[4] This case in particular involves noneconomic tort damages arising from the ownership and use of a motor vehicle, meaning that, pursuant to MCL 500.3135(1), defendants are "subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." *McCormick v Carrier*, 487 Mich 180, 189-190; 795 NW2d 517 (2010); *Rory v Contl Ins Co*, 473 Mich 457, 465 & n 10; 703 NW2d 23 (2005). Defendants do not contest on appeal whether plaintiff satisfied this threshold requirement.

trial, make it clear that pain and suffering will continue for at least sometime into the future." 2 Stein on Personal Injury Damages Treatise § 8:26 (3d ed.). See, e.g., *Fogel v Sinai Hosp of Detroit*, 2 Mich App 99, 102-103; 138 NW2d 503 (1965). The credibility of a witness's testimony is a question for the trier of fact. *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002).

In this case, the trial court did not clearly err in awarding the damages in question. Regarding the award of $400,000 in damages from the time of the accident until the hearing, defendants do not attempt to compare this amount to similar cases or to otherwise explain why the particular dollar amount was inappropriate. Instead, they more generally assert on appeal that plaintiff failed to prove the extent of his physical injuries and damages because he did not offer medical testimony. This argument is unavailing given that a lay witness may testify to the existence of his personal injuries. See *Gibson*, 328 Mich at 702. The trial court heard plaintiff's testimony regarding the nature and effects of his injuries, and the credibility of this testimony was a question for the trier of fact. *Marshall Lasser, PC*, 252 Mich App at 110. Moreover, although there was no expert testimony, plaintiff did offer medical records and photographs into evidence to confirm the nature and extent of his injuries sustained in the automobile accident. Plaintiff's testimony, as corroborated by medical records, revealed that, as a result of the accident, plaintiff suffered: (1) an extensive head laceration, requiring 85 stitches in the emergency room and subsequent plastic surgery, (2) anterior temporal parenchymal contusion, (3) left superior and inferior pubic rami fractures, i.e., a broken pelvis, and (4) a broken back, specifically, a T3 end plate fracture, an L5 pars interarticularis fracture, and minimally displaced superior articulate facet fracture at C7. In light of this evidence, the trial court did not clearly err in concluding that the serious physical injuries in question resulted from the automobile accident.[5]

In addition to plaintiff's physical injuries, the evidence showed that plaintiff had mental and emotional injuries resulting from the accident, including depression, anxiety, and sleep disturbances. That these concerns related to the accident was a fair inference from the evidence, specifically given testimony that plaintiff had no mental or psychological issues before the accident and now suffers from these problems afterward. Moreover, plaintiff indicated that his sleep disturbances involved nightmares with headlights coming at him on the road, providing further evidence that plaintiff's new emotional and psychological disturbances resulted from the accident.

---

[5] To the extent defendants assert that the award of damages was inappropriate given plaintiff's contributory negligence, the trial court did not clearly err in rejecting defendants claims of contributory negligence. The evidence offered by plaintiff—including, photographs of tire tracks in the weeds, evidence that plaintiff habitually walked in the "weeds," and reports indicating that plaintiff was discovered 25 or more feet from the road—demonstrated that plaintiff was walking in the weeds, off the travelled portion of the road, when Kevin, who was operating a motor vehicle while intoxicated, drove off the road and struck plaintiff. On these facts, the trial court did not clearly err in rejecting any assertions of contributory negligence.

Given plaintiff's physical, mental and emotional symptoms resulting from the accident, the trial court did not clearly err in awarding $400,000 in noneconomic damages to plaintiff as compensation for his pain and suffering in the two years between the time of the accident and the evidentiary hearing. In particular, plaintiff and his mother both described an arduous physical and mental recovery for plaintiff following the accident. As a twenty-year-old, plaintiff was forced to spend months in a hospital bed at his parents' home, dependant on his family for basic activities such as showering or using the bathroom. Plaintiff needed in-home physical therapy, he wore a back brace for months, used a wheelchair, and rarely left the house. His mother described plaintiff as crying in pain when completing simple tasks such as leaving his bed. Even when he left his parents' home for college in the fall, he still needed to use a back brace and he suffered the embarrassment of having to seek assistance from his college roommates for various basic activities. He underwent plastic surgery for his facial laceration, but was still left with a scar on his face which made him self-conscious, particularly as he attempted to pursue college studies in broadcasting. Plaintiff also needed pain medications to cope with the pain in his back. Further, his back pain had hindered his ability to perform daily tasks such as chores, yard work, etc. For example, it made sitting for more than 20 minutes at a time quite painful, meaning plaintiff had difficulty accomplishing his school work in college. Plaintiff had also been an active young man, who had enjoyed playing soccer and other sports his entire life; but, following the accident his back pain prevented plaintiff from partaking in such activities. Plaintiff also had lingering knee pain which doctors were unable to resolve. Mentally, he was also left with sleep disturbances, an inability to focus, anxiety and depression, for which he saw a therapist and took medication to help him focus. Given this evidence of plaintiff's pain and suffering from the time of his accident until the time of trial, the trial court did not clearly err in awarding plaintiff $400,000 in damages for this timeframe. Noneconomic damages for pain and suffering are, by their very nature, an imprecise means of compensation and defendants have not shown clear error in the amount awarded.

Similarly, regarding damages for future pain and suffering, the trial court did not clearly err in awarding plaintiff $350,000 for future pain and suffering. Again, defendants make no effort to compare or contrast this amount to other damage awards in similar cases. They instead argue that there is no evidence, and in particular no medical evidence, that plaintiff's injuries are permanent or that his pain and suffering will persist into the future. It is true, as defendants note on appeal, that many of plaintiff's physical injuries have healed and, for instance, he no longer needs a back brace or a wheelchair. It is nonetheless also true, however, that plaintiff has been left with significant back pain and knee pain which greatly hinders his everyday life and his enjoyment thereof. That this pain persisted at the time of trial, more than two years after the accident, allows for the conclusion that plaintiff's pain will likely be permanent. Plaintiff specifically testified that he initially experienced some improvement of his physical pain following his accident, but that at the time of the hearing his level of pain had been constant for approximately one year. Further, the evidence showed that plaintiff continued to seek medical assistance for his back pain, he was still on medication for his back pain, and he had been advised by his doctors that his back pain was likely something he would simply have to endure. This back pain was by no means insignificant given that it left plaintiff unable to perform many routine tasks such as yard work, chores, and even activities that required sitting for long periods, such as school work. It also prevented plaintiff from enjoying more vigorous activities such as soccer and other sports, which he had previously enjoyed. Given that more than two years after the accident plaintiff remained unable to engage in these activities because of his back pain, the

trial court's conclusion that the effects of the injuries were permanent was not mere speculation, rather it was a fair inference from the evidence. In other words, on the evidence presented, the nature of plaintiff's injuries and their duration was such that the trial court did not clearly err in concluding the resulting pain and suffering was permanent. See generally 2 Stein on Personal Injury Damages Treatise § 8:26 (3d ed.).

Likewise, given the evidence presented, the trial court reasonably concluded that the accident left plaintiff with a permanent scar on his face. The trial court had the opportunity to personally view this scar, and the court noted for the record that, at the time of trial, the scar ran "down the middle of [plaintiff's] face" and that it was visible from a distance of 8 to 10 feet. That the scar remained so visible more than two years after the accident, despite treatment in the emergency room and plastic surgery a year later, strongly suggests that the scar will be permanent and that it will continue to cause plaintiff the self-coconsciousness he described at the hearing. Aside from plaintiff's self-consciousness about his scar, plaintiff's mental and emotional injuries, including his inability to focus, his depression and anxiety, as well as his sleep disturbances have persisted for more than two years, and he continued to take medication to help him focus. The evidence also showed that plaintiff was expected to live another 56.6 years. Overall, given plaintiff's life expectancy, the permanent nature of plaintiff's physical pain, the permanent scar to his face, and his lingering mental and emotional distress, the trial court did not clearly err in awarding future damages in the amount of $350,000 in gross present cash value.

Lastly, contrary to defendants' arguments, they are not entitled to have the award of future damages reduced to reflect gross present value because the trial court has already conducted this calculation. Specifically, pursuant to MCL 600.6306(1)(e), future noneconomic damages must be reduced to "gross present cash value." In this case, consistent with this requirement, the trial court specified that the award of future damages accounted for a reduction to present cash value. Although the trial court did not provide details regarding its calculations, see MCL 600.6306(2), defendants point to nothing in the plain statutory language which would require the court to make these calculations on the record. Instead, all that is required by the statutory language is that the noneconomic future damages included in an order of judgment are reduced to present cash value. See *Hashem v Les Stanford Oldsmobile, Inc*, 266 Mich App 61, 93; 697 NW2d 558 (2005). Because the trial court indicated that the future damages in this case had been reduced in this manner, defendants have received the reduction required under MCL 600.6306(1)(e) and they are not entitled to a further reduction. See *Hashem*, 266 Mich App at 92-93; *Setterington v Pontiac Gen Hosp*, 223 Mich App 594, 607; 568 NW2d 93 (1997).

Affirmed. Having prevailed in full, plaintiff may tax costs pursuant to MCR 7.219.


/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Joel P. Hoekstra