*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROSA WOODS,

        Plaintiff-Appellant,

v

ROSETTA HALL,

        Defendant,

and

EMMA BRAZIER,

        Defendant-Appellee.

UNPUBLISHED
September 02, 2025
2:02 PM

No. 371068
Wayne Circuit Court
LC No. 22-009551-CH

Before: BORRELLO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

This action involves claims to quiet title and adverse possession concerning a vacant lot adjacent to plaintiff, Rosa Woods's, house in Detroit, Michigan. Plaintiff challenges the trial court's decisions allowing her attorney to withdraw, setting aside a default, granting summary disposition in favor of defendants Rosetta Hall and Emma Brazier, and denying in part her requests for an emergency temporary restraining order. For the reasons set forth below, we affirm.

-1-

## I. FACTS

Two properties in Detroit are at issue: (1) 18055 Shields Street, which has a house (lot 251), and (2) the adjacent vacant property at 18049 Shields Street (lot 252).[1] This appeal chiefly concerns the vacant lot and defendant Brazier.[2]

Through a land contract in 1999, plaintiff's mother, defendant Hall, obtained a vendee interest in both lots and then executed a quitclaim deed conveying her interest in the house lot to plaintiff. Hall did not live in the house or make the land-contract payments; instead, plaintiff did. The land-contract vendor's interest in the land contract, and his title to the lots, were conveyed numerous times to various corporate entities over several years.[3]

Ownership of the parcels remained steady until 2005, when a tax-foreclosure judgment was entered on the vacant lot. Absolute fee simple title to the vacant lot ultimately vested with the Wayne County Treasurer, who in June 2009, quitclaimed its interest to Detroit's Planning and Development Department (PDD).

Two months later, plaintiff obtained a home-improvement loan through Detroit's Minor Home Repair Program—the City granted plaintiff a future advance mortgage on the house property securing the loan. The winning bid for repairs concerned the house property, and the work specifications detailed numerous repairs to be made directly to the house but also included the installation of a chain link fence to run "along the rear lot lines."

Plaintiff paid off the land contract in 2014, so the legal titleholder at that time, R E Investments, Inc., quitclaimed its interest in the house lot to Hall. In 2015, the City discharged the home-repair mortgage after plaintiff fully paid it. Around the same time, the City's PDD conveyed the vacant lot to the Detroit Land Bank Authority, which, in August 2021, then conveyed its interest in the vacant lot to Brazier.

---

[1] The tax parcel identification (ID) numbers for the two lots are 13019399 and 13019400. In regard to conveyances involving both lots, the two tax parcel ID numbers were generally contained in the associated documents. But when a conveyance concerned only one lot, tax parcel ID number 13019399 was typically attached to the house lot and tax parcel ID number 13019400 was typically attached to the vacant lot, although at times the reverse was true.

[2] The trial court set aside a default that had been entered against Hall and later granted summary disposition to Hall in regard to title to the house lot even though Hall never appeared in the lawsuit. Plaintiff does not challenge those rulings on appeal.

[3] Plaintiff separately raised several claims against numerous financial entities concerning, among others, the propriety of those conveyances. See *Woods v R E Investment, Inc*, unpublished per curiam opinion of the Court of Appeals, issued August 23, 2018 (Docket No. 338139); *Woods v R E Investment, Inc*, unpublished per curiam opinion of the Court of Appeals, issued September 23, 2021 (Docket No. 351972).

Plaintiff filed this two-count action against Hall and Brazier shortly thereafter. Count I sought to quiet title to the vacant lot in her favor, along with an order granting or recognizing her title to the house lot, claiming that Hall had no objection to her request. And Count II alleged (in the alternative) that she acquired title to both lots by adverse possession. Several trial court orders are at issue in this appeal, including: (1) permitting plaintiff's counsel to withdraw, (2) setting aside Brazier and Hall's defaults, (3) granting summary disposition in favor of Brazier and Hall after concluding Brazier held title to the vacant lot and that Hall held title to the house lot, and (4) granting plaintiff's emergency motion for a temporary restraining order (TRO), but then granting in part and denying in part a second TRO ordering the status quo be maintained. Plaintiff now appeals by right.[4]

## II. WITHDRAWAL OF COUNSEL

We turn first to plaintiff's assertion that the trial court abused its discretion by allowing her attorney to withdraw early in the case. This Court reviews "a trial court's decision regarding a motion to withdraw for an abuse of discretion." *In re Withdrawal of Attorney*, 234 Mich App 421, 431; 594 NW2d 514 (1999). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Slis v Michigan*, 332 Mich App 312, 335; 956 NW2d 569 (2020).

Generally, "an attorney who has entered an appearance may withdraw from the action or be substituted for only on order of the court." MCR 2.117(C)(2). Although the Rules of Professional Conduct do not expressly apply to motions to withdraw as counsel, it is only logical "to consider the question of withdrawal within the framework of our code of professional conduct." *In re Withdrawal of Attorney*, 234 Mich App at 432. MRPC 1.16(b)(6) permits withdrawal upon a showing of "good cause," which this Court held exists when the client causes a total breakdown in the attorney-client relationship. *Ambrose v Detroit Edison Co*, 65 Mich App 484, 488; 237 NW2d 520 (1975).

Measured against these standards, the trial court did not abuse its discretion by granting plaintiff's counsel's motion to withdraw. Consider first that in a letter plaintiff sent to the clerk of the court about her attorney's conduct and request for withdrawal, she admitted that "the only sane solution is for [counsel] to withdraw," that counsel had engaged in "psychological abuse," and that the trial court needed "to protect" plaintiff from counsel. Or take her response to counsel's motion to withdraw, in which she argued that her attorney's "desires were out of professional bounds for attorney conduct," and that counsel's "misconduct was egregious" (she apparently insisted upon pursuing an objective—suing to quiet title without including the City of Detroit in the action—that counsel considered imprudent). Although plaintiff offered various plausible reasons for rejecting the withdrawal motion, the record supports the trial court's conclusion that her own words demonstrated that there was a breakdown of the attorney-client relationship and that she had rendered counsel's continued representation unreasonably difficult. Nor is there any indication

---

[4] Shortly before we heard argument in this case, Woods filed a letter with this Court alleging additional misconduct by Brazier. Because those assertions were not before the trial court, we do not address the issues raised in the letter.

that plaintiff sought alternate counsel or that counsel's withdrawal had a material adverse effect on plaintiff's interests (and we note that plaintiff acted pro se in three earlier appeals, once achieving a partial reversal, and also acted pro se in those cases in the lower courts).

## III. SETTING ASIDE THE DEFAULT

Plaintiff next argues that the trial court abused its discretion by setting aside a properly entered default against Brazier. "The ruling on a motion to set aside a default or a default judgment is entrusted to the discretion of the trial court." *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 227; 600 NW2d 638 (1999). Therefore, a trial court's decision on a motion to set aside a default is reviewed for an abuse of discretion. *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015).

"[A]lthough the law favors the determination of claims on the merits, . . . the policy of this state is generally against setting aside defaults and default judgments that have been properly entered." *Alken-Ziegler*, 461 Mich at 229 (citation omitted). Defaults and default judgments, as well as motions to set them aside, are governed by MCR 2.603. Court rules are construed by applying "the legal principles governing the application and construction of statutes." *Lawrence M Clarke, Inc v Richo Constr, Inc*, 489 Mich 265, 272; 803 NW2d 151 (2011). The interpretation and application of court rules are subject to review de novo. *Safdar v Aziz*, 501 Mich 213, 217; 912 NW2d 511 (2018). "Court rules should be interpreted to effect the intent of the drafter, the Michigan Supreme Court." *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020) (quotation marks and citation omitted). "Clear and unambiguous language contained in a court rule must be given its plain meaning and is enforced as written." *Id.*

MCR 2.603(D)(1) provides, in pertinent part, that "[a] motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and a statement of facts showing a meritorious defense . . . is filed." "[T]he 'good cause' and 'meritorious defense' requirements of MCR 2.603(D)(1) are analytically different concepts and . . . a party must show both in order to prevail on a motion to set aside a default judgment." *Barclay v Crown Bldg & Dev, Inc*, 241 Mich App 639, 653; 617 NW2d 373 (2000). A party seeking to set aside default establishes good cause by demonstrating "(1) a procedural irregularity or defect, or (2) a reasonable excuse for not complying with the requirements that created the default." *Id.* And, "[w]hile a lesser showing of good cause will suffice where the meritorious defense is strong, good cause must still be shown in order to prevent a manifest injustice." *Id.*

This court's opinion in *Shawl v Spence Bros, Inc*, 280 Mich App 213; 760 NW2d 674 (2008), sets forth the various nonexclusive factors courts may consider in examining whether "good cause" or a "meritorious defense" exist. "Good cause" factors include:

> (1) whether the party completely failed to respond or simply missed the deadline to file;
>
> (2) if the party simply missed the deadline to file, how long after the deadline the filing occurred;

(3) the duration between entry of the default judgment and the filing of the motion to set aside the judgment;

(4) whether there was defective process or notice;

(5) the circumstances behind the failure to file or file timely;

(6) whether the failure was knowing or intentional;

(7) the size of the judgment and the amount of costs due under MCR 2.603(D)(4);

(8) whether the default judgment results in an ongoing liability (as with paternity or child support); and

(9) if an insurer is involved, whether internal policies of the company were followed. [*Id.* at 238].

And as for "whether a defendant has a meritorious defense, the trial court should consider whether the affidavit contains evidence that: (1) the plaintiff cannot prove or defendant can disprove an element of the claim or a statutory requirement; (2) a ground for summary disposition exists under MCR 2.116(C)(2), (3), (5), (6), (7) or (8); or (3) the plaintiff's claim rests on evidence that is inadmissible." *Shawl*, 280 Mich App at 238.

We start with the strength of Brazier's defense because it frames her required good-cause showing. Brazier, of course, had an exceedingly strong defense to plaintiff's claim of title to the vacant lot—the 2005 foreclosure and subsequent deed conveying the lot to her.

That leaves us with whether Brazier presented good cause for her failure to file a timely answer. The trial court found good cause because Brazier had appeared at all the court hearings despite contesting personal service. These findings cut against each other—defective process can help establish good cause, *id.*, but appearing at the hearings indicates perhaps service was perfected. But we need not conclusively resolve this tension, for "[a] trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason." *Gleason v Mich Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). This is so, because Brazier ultimately filed an answer, and nothing in the record indicates she knowingly or intentionally filed an untimely answer. See *Shawl*, 280 Mich App at 238 (noting one factor for showing good cause is "whether the failure was knowing or intentional").

For these reasons, the trial court did not abuse its discretion by setting aside the default entered against Brazier.

V. QUIET TITLE AND THE VACANT LOT

Plaintiff argues that the trial court erred by granting summary disposition in favor of Brazier after concluding as a matter of law that Brazier, and not plaintiff, held title to the vacant lot. A trial court's ruling on a motion for summary disposition is reviewed de novo. *Champine v Dep't of Transp*, 509 Mich 447, 452; 983 NW2d 741 (2022). Actions to quiet title are equitable

in nature. MCL 600.2932(5). This Court reviews de novo equitable decisions. *Gorte v Dep't of Transp*, 202 Mich App 161, 171; 507 NW2d 797 (1993).

In a quiet-title action, the plaintiff bears "the initial burden of establishing a prima facie case of title." *Special Prop VI LLC v Woodruff*, 273 Mich App 586, 590; 730 NW2d 753 (2007). A plaintiff establishes a prima facie case of title by presenting sufficient evidence showing that he or she acquired, and currently possesses, a legal or equitable interest in the property. *Appleton Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999). If a plaintiff establishes a prima facie case of title, "the defendant then has the burden of proving superior right or title in itself." *Fed Home Loan Mtg Corp v Werme*, 335 Mich App 461, 470; 966 NW2d 729 (2021).

Under the applicable foreclosure statute, MCL 211.78*l*(1), as amended by 2003 PA 263, "[o]nce the foreclosure judgment enters and the redemption and appeal periods expire, fee simple title to the property vests in the foreclosing governmental unit." *2 Crooked Creek, LLC v Cass Co Treasurer*, 507 Mich 1, 10; 967 NW2d 577 (2021). "[C]ircuit courts generally may not alter a judgment of foreclosure"; rather, MCL 2.11.78*l* "provided divested property owners and interest holders who claim they did not receive any notice required under the GPTA an action for monetary damages[.]" *Id*.

Indeed, Michigan caselaw provides that a property owner does not retain any right, title, or other interest relative to his or her premises after the government forecloses on the property for unpaid taxes and the redemption and appeal periods elapse. *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 461; 952 NW2d 434 (2020). MCL 211.78k(5)(b), as amended by 2003 PA 263, provided that, but for exceptions not applicable here, foreclosure judgments required notice that "fee simple title to property foreclosed by the judgment will vest absolutely in the foreclosing governmental unit[.]"

Plaintiff has no basis to now obtain title to the vacant lot. She premises her claim of title to the vacant lot on the 1999 quitclaim deed conveying a property interest from Hall to plaintiff, which of course occurred *prior* to the foreclosure. Although the land contract expressly referenced the two lots, Hall's quitclaim deed to plaintiff applied only to the house lot and the home's address but not the vacant lot or its separate address. True, the quitclaim deed also alluded to the tax parcel ID number that apparently was attached to the vacant lot, but the tax parcel ID number ostensibly attached to the house was not cited. Under these circumstances, we cannot reasonably conclude that, for purposes of summary disposition, plaintiff presented sufficient evidence showing a prima facie case of title.

And regardless, any interest in the vacant lot conveyed to plaintiff by Hall would have been that of equitable title. See *Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999) ("A land contract is . . . an executory contract in which legal title remains in the seller/vendor until the buyer/vendee performs all the obligations of the contract while equitable title passes to the buyer/vendee upon proper execution of the contract."). When the foreclosure took place in 2005, plaintiff's interest in the vacant lot would have properly been characterized as equitable title because the land contract had not yet been paid off. See *id*.; MCL 565.361(1) ("When the vendee named in a land contract, or his or her heirs, successors, or assigns, has fully paid and performed the obligations under the contract that are a precondition to the sale and conveyance of the land,

the vendor named in the contract shall make conveyance of the land to the vendee by a deed of conveyance . . . .”). But any asserted equitable title to the vacant lot was effectively surrendered or otherwise lost by way of the foreclosure, and Brazier eventually gained legal title to the vacant lot. *Ruby & Assoc, PC v Shore Fin Servs*, 276 Mich App 110, 118; 741 NW2d 72 (2007), vacated in part on other grounds by 480 Mich 1107; 745 NW2d 752 (2008). And any defects, including notice failures, regarding the foreclosure simply had no impact on Brazier's fee simple title to the vacant lot because under the then-applicable version of MCL 211.78*l*(1), any notice failure in relation to plaintiff could give rise to a suit for only money damages against the foreclosing entity.

Resisting this conclusion, plaintiff points to post-foreclosure conduct (the home-repair loan received from Detroit, secured by the future advance mortgage) and asserts the City recognized that she owned the vacant lot. But the record evidence demonstrates the City's PDD held legal title to the vacant lot at this time and belies any assertion that the mortgage covered the vacant lot. And even if the City held a mortgage on both lots, there is no legal basis to conclude that this meant that the PDD lost title to the vacant lot or that the Wayne County Treasurer or PDD never held legal title. Finally, plaintiff makes much of her claim that the loan encompassed the installation of a fence on the vacant lot, but, even if true, all the other repairs were to the house and therefore undertaken within the house lot, and regardless, installation of a fence on the vacant lot did not somehow result in plaintiff's retaining or regaining equitable title to that lot.

Nor does the doctrine of adverse possession provide any alternative basis for relief to plaintiff because she did not bring an action for the recovery or possession of land within 15 years after it accrues. MCL 600.5801(4). "A claim of adverse possession requires clear and cogent proof that possession has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of fifteen years." *Kipka v Fountain*, 198 Mich App 435, 438; 499 NW2d 363 (1993). And considering the many years that the governmental entities owned the vacant lot after the 2005 foreclosure, and that Brazier acquired title only in 2021, plaintiff cannot establish the requisite 15-year period in order to obtain title by adverse possession.

For these reasons, the trial court did not err by granting summary disposition to Brazier with respect to title to the vacant lot.

V. TEMPORARY RESTRAINING ORDERS

Finally, plaintiff argues that the trial court abused its discretion in its rulings on her emergency motions for a TRO under MCR 3.310(B)(1). This Court reviews for an abuse of discretion a trial court's decision regarding a TRO. See *Bowers v VanderMeulen-Bowers*, 278 Mich App 287, 295; 750 NW2d 597 (2008). The court's factual findings underlying its determination whether to grant injunctive relief are reviewed for clear error. *Slis*, 332 Mich App at 335.

With respect to plaintiff's initial motion for an ex-parte TRO (filed with her complaint), the trial court enjoined Brazier from erecting a permanent structure on the vacant lot and directed her to remove any temporary structure for at least 45 days so that plaintiff could have vehicular access to her backyard. This order was favorable to plaintiff, and plaintiff raises no attendant appellate objection justifying relief.

Subsequently, plaintiff pursued a motion for another emergency TRO, along with a show-cause order and preliminary injunction. At the hearing on the motion, the trial court noted that Brazier had placed a temporary fence on the vacant lot. Plaintiff claimed that her car was therefore marooned behind her house and could not be driven, while Brazier contended that plaintiff could still use her car by way of an alley, or by parking on the street. The trial court ruled from the bench that "the status quo [was] to be maintained," meaning that there could be no changes or additional barricades put in place, but the existing barricade was to remain in place. The record is unclear, however, whether the temporary fencing actually prevented plaintiff from using her automobile or whether Brazier needed the temporary fence for some legitimate purpose.

Subsequent events have rendered our review of this issue moot. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). As is discussed earlier, the trial court did not err by setting aside the default as to Brazier or by granting summary disposition in favor of Brazier. Accordingly, there is no relief available to plaintiff in response to any error by the trial court in not requiring Brazier to remove the temporary fencing back in April 2023. We therefore need not decide whether the trial court erred by partly denying plaintiff's second motion for a TRO with respect to the temporary fence or whether Brazier violated the status-quo order.

## VI. CONCLUSION

For these reasons, we affirm the trial court's judgment. Having fully prevailed on appeal, Brazier may tax costs under MCR 7.219.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock

-8-